**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:23-cr-46 |
| v. | ) | |
| | ) | Judge Travis R. McDonough |
| JEREMY BOYD EAKER | ) | |
| | ) | Magistrate Judge Mike Dumitru |
| | ) | |

---

**MEMORANDUM OPINION & ORDER**

---

Before the Court is Defendant Jeremy Eaker's motion to suppress evidence from his traffic stop, alleged illegal detention, and search (Doc. 654). On March 19, 2026, United States Magistrate Judge Dumitru held a hearing on Defendant's motion to suppress (Doc. 711) and, on April 23, 2026, issued a report and recommendation ("R&R"), recommending that the Court deny Defendant's motion to suppress (Doc. 718). Defendant has objected to the R&R (Doc. 728), and those objections are now before the Court.

## I. BACKGROUND

A federal grand jury returned an indictment charging Defendant with conspiring to distribute fentanyl and methamphetamine. (*See* Docs. 10, 632.) Defendant filed a motion to suppress evidence obtained from a traffic stop that occurred on May 18, 2022, arguing that the "officer unlawfully prolonged the traffic stop" and that Defendant was "illegally detained," which "vitiates any consent" he gave to the officer. (Doc. 654, at 8–10.)

Magistrate Judge Dumitru heard argument on the motion to suppress (Doc. 711) and entered an R&R (Doc. 718). The R&R found that: (1) the officer's actions did not unlawfully extend the traffic stop, and (2) in the alternative, the officer had reasonable suspicion to extend

the traffic stop. (Doc. 718, at 8–15.) In the objections presently before the Court, Defendant asserts that: (1) eight factual findings made by Magistrate Judge Dumitru are not supported by the evidence[1]; (2) Magistrate Judge Dumitru failed to make a credibility finding of Officer Dennis's testimony; and (3) Magistrate Judge Dumitru erred in concluding that the traffic stop was not unlawfully prolonged, that the officer had reasonable suspicion to prolong the traffic stop, and that Defendant's consent was voluntary. (*See* Doc. 728.)

After reviewing the evidence presented for the suppression hearing *de novo*, the Court finds the facts set forth in the R&R consistent with the evidence presented.[2] Accordingly, the Court **ADOPTS BY REFERENCE** the facts as set forth in the R&R (Doc. 718, at 1–6). *See, e.g., United States v. Winters*, 782 F.3d 289, 295 n.1 (6th Cir. 2013) (affirming the district court's adoption of the facts set out in a magistrate judge's report and recommendation when the

[1] Some of Defendant's objections to Magistrate Judge Dumitru's factual findings argue both that (1) the magistrate judge erred in making such findings and (2) Officer Dennis's testimony as to those facts undermines his credibility. (*See* Doc. 728, at 2–13.) The Court will address these factual-finding objections in its analysis of the overarching arguments Defendant raises—whether the traffic stop was unlawfully prolonged, whether there was reasonable suspicion, or whether Officer Dennis was credible.

[2] Defendant objects only to one point in the R&R's fact section, clarifying his position that his stop became unlawful when Officer Dennis used the word "s**tbag," not when Defendant was asked to walk to the patrol car. (Doc. 728, at 15.) The record, however, supports the R&R's factual account. At the hearing, the magistrate judge asked defense counsel whether his theory was that the traffic stop became an unlawful detention when Officer Dennis "decide[d] to have [Defendant] go back to the patrol car and start questioning him." (Doc. 724, at 112.) Defense counsel answered, "Yes." (*Id.*) Counsel also stated separately that "the point in which it turns into an unlawful detention is when [the officers] approach back to the car and get [Defendant] out of the car." (*Id.* at 108.) While counsel did argue at other points that the stop became unlawful when Officer Dennis used the word "s**tbag" (*id.* at 106, 116), the record still supports the R&R's recognition that counsel clarified the relevant moment as when "Officer Dennis asked Defendant to walk away from the Vehicle and back towards the patrol car." (Docs. 718, at 5; 724, at 112, 108.)

defendant did not object to the facts outlined by the magistrate judge). The Court will refer to the facts only as necessary to analyze the issues raised in Defendant's objections to the R&R.

## II. STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the report and recommendation to which objections are made. 28 U.S.C. § 636(b)(1)(C). *De novo* review does not, however, require the district court to rehear witnesses whose testimony has been evaluated by the magistrate judge. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). The magistrate judge, as the factfinder, has the opportunity to observe and to hear the witnesses and to assess their demeanor, putting him in the best position to determine credibility. *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264–65 (6th Cir. 1999). A magistrate judge's assessment of witnesses' testimony is, therefore, entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003); *see also United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999).

## III. ANALYSIS

### A. Officer Dennis's Credibility

Defendant first argues that Magistrate Judge Dumitru failed to make a credibility determination as to Officer Dennis and that, based on his testimony at the suppression hearing, Officer Dennis was not credible. Specifically, Defendant asserts that: (1) Officer Dennis inaccurately described the traffic stop's location as a "high crime trafficking area"; (2) Officer Dennis's affidavit representing that Defendant's driving caused him and others to abruptly stop is refuted by the video evidence; (3) Officer Dennis's testimony at the suppression hearing about knowing Defendant's name and information prior to the stop was vague; (4) Officer Dennis used

profanity when discussing Defendant to a fellow officer; and (5) Officer Dennis's affidavit stated he seized $7,233 but he only deposited $6,653. (Doc. 728, at 2–5, 9–13.)

Although the R&R does not explicitly state that Magistrate Judge Dumitru found Officer Dennis credible, the R&R repeatedly cites Officer Dennis's testimony during the suppression hearing in support of findings of fact, thereby indicating that Officer Dennis's testimony was credible. (*See* Doc. 718, at 2–7, 10–11.) That credibility determination is entitled to deference because Magistrate Judge Dumitru was in the best position to observe and hear Officer Dennis's testimony and to assess his demeanor at the suppression hearing. *Moss*, 286 F.3d at 868; *Hill*, 195 F.3d at 264–65; *Irorere*, 69 F. App'x at 236; *Navarro-Camacho*, 186 F.3d at 705. Moreover, the Court has conducted a *de novo* review of Officer Dennis's testimony, as well as dash-cam evidence presented during the suppression hearing, and finds that Officer Dennis's testimony was consistent with the recordings of his interactions with Defendant. Even if the traffic stop location is not considered a high-crime area by locals, this fact was only one among nine other findings supporting a reasonable suspicion to extend the traffic stop. (*See* Doc. 718, at 14–15.) Accordingly, Defendant's objections regarding Officer Dennis's credibility are **OVERRULED**.

### B. Whether the Traffic Stop was Lawfully Extended

Defendant next objects to the R&R's determination that the traffic stop was lawfully prolonged. (*See* Doc. 728, at 9–13–17.) Specifically, Defendant contends that: (1) the traffic stop changed into a "full-scale drug investigation" when Officer Dennis said, "If I was a s**tbag, I'd carry a mean a** dog with me, too;" and (2) Officer Dennis effectively admitted that he did not base his decision to extend the stop on the need to await word on whether the pending warrant required an arrest. (*See id.* at 9–11, 13–17.)

The Fourth Amendment protects individuals "to be secure in their persons . . . and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment.]" *United States v. Whitley*, 34 F.4th 522, 528 (6th Cir. 2022) (quoting *Whren v. United States*, 517 U.S. 806, 809–10 (1996)). Whether the seizure is reasonable "is contingent only upon whether the police have probable cause to believe that a traffic violation has occurred." *Id.* (citation omitted). "A seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Id.* (citations omitted). Therefore, a traffic stop must be "limited in scope and duration," and "if an officer exceeds the scope or duration," he or she "must have reasonable suspicion to continue the stop on unrelated grounds." *Id.* at 529.

As Magistrate Judge Dumitru explained:

> A seizure for a traffic violation justifies a police investigation of that violation. "[A] relatively brief encounter," a routine traffic stop is "more analogous to a so-called 'Terry stop' . . . than to a formal arrest." Like a Terry stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop, and attend to related safety concerns[.] Because addressing the infraction is the purpose of the stop, it may "last no longer than is necessary to effectuate th[at] purpose." Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.
>
> ***
>
> **Beyond determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to [the traffic] stop." Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance.** These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly.

(Doc. 718, at 8–9 (quoting *Rodriguez v. United States*, 575 U.S. 348, 354–55 (2015)). "Asking a few questions is a routine traffic-violation task, if these questions are context-framing questions about a defendant's travel history and plans[.]" *United States v. King*, No. 24-1089, 2025 WL 2172432, at *6 (6th Cir. July 31, 2025) (citation modified). Determining whether a stop has been prolonged requires an inquiry into "what the police in fact did and whether it related to the purpose of the traffic stop." *United States v. Whitley*, 34 F.4th 522, 531 (6th Cir. 2022) (citation modified).

As an initial matter, Defendant conceded that he stopped past the white stop line at an intersection (Doc. 724, at 102–03), violating Tennessee Code Annotated § 55-9-110. Therefore, Officer Dennis had probable cause to initiate the stop. *United States v. Hughes*, 606 F.3d 311, 316 (6th Cir. 2010) (explaining that "in order for [a] traffic stop to be permissible under the Fourth Amendment, a police officer must know or reasonably believe that the driver of the car is doing something that represents a violation of law.").

The Court agrees with the R&R's conclusion that "it is not entirely clear that the traffic stop was, or reasonably should have been, completed at the time of the Alleged Abandonment [the moment Officer Dennis asked Defendant to approach the patrol car for further questioning]." (Doc. 718, at 10–12.) When Officer Dennis asked Defendant to go to the patrol car, Officer Dennis was still undertaking routine traffic-violation tasks—waiting on information regarding an outstanding warrant for Defendant and asking Defendant context-framing questions of his travel plans. [3] *See Rodriguez*, 575 U.S. at 355; *King*, 2025 WL 2172432, at *6 (citing

---

[3] During the hearing, Magistrate Judge Dumitru asked defense counsel for clarification of Defendant's position on when the stop became unlawful. (Doc. 724, at 112.) Defense counsel confirmed it was when Officer Dennis asked Defendant to go to the patrol car. (*Id.*) Defendant's objections to the R&R instead point to an earlier moment—Officer Dennis's use of the word "s**tbag." (Doc. 728, at 7, 9–10, 14, 17.) But that comment preceded the request to go

*United States v. Jordan*, 100 F.4th 714, 718 (6th Cir. 2024); *United States v. Williams*, 68 F.4th 304, 307 (6th Cir. 2023)).

Defendant argues that Officer Dennis did not rely on the warrant issue to prolong the stop. (Doc. 728, at 11, 14, 16, 19.) However, Officer Dennis testified several times that he was missing and waiting for verification on that warrant. (Doc. 724, at 20, 53, 98.) Furthermore, he testified that he typically does not write citations if he is "going to take somebody into custody, and I think we were still waiting for that Catoosa County warrant to either verify or not." (*Id.* at 55.) As the R&R states, Defendant's "argument assumes that the stop was prolonged in the first place." (Doc. 718, at 12; *see also*, Doc. 724, at 20, 77 (asking Officer Dennis whether the warrant was "a basis for [him] to prolong [the stop]").) Since Officer Dennis was still undertaking routine traffic-violation tasks, the traffic stop was not unlawfully prolonged. Accordingly, Defendant's objections to the R&R holdings that the traffic stop was lawfully prolonged are **OVERRULED**.

**C. Whether the Officer had Reasonable Suspicion to Extend the Traffic Stop**

Defendant alternatively objects to every fact Magistrate Judge Dumitru relied on in finding there was reasonable suspicion to extend the traffic stop. (Doc. 728, at 2–9, 17–19.)

An officer may not prolong a traffic stop "absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez*, 575 U.S. at 355; *Whitley*, 34 F.4th at 532 ("an independent reasonable suspicion of unlawful activity beyond the traffic violation was required to lawfully continue the stop")).

> To satisfy the reasonable-suspicion standard, an officer must put forth more than an inchoate and unparticularized suspicion or hunch. Reasonable suspicion, however, requires considerably less than proof of wrongdoing by a preponderance

---

to the patrol car (Doc. 718, at 4–5), meaning Officer Dennis was still performing routine traffic-violation tasks when he said it.

> of the evidence. Reviewing courts must look to the totality of the circumstances of each case to see whether the detaining officer has a particularized or objective basis for suspecting legal wrongdoing.

*Whitley*, 34 F.4th at 532 (citation modified).

As discussed earlier, because Officer Dennis was still performing routine traffic-violation tasks, the stop was not unlawfully prolonged. *See supra* Section III.B. Nonetheless, even if it was prolonged, sufficient facts establish reasonable suspicion of criminal activity to justify extending the stop. Officer Dennis testified that, during his contact with Defendant, Defendant's speech was "all over the place," that "it was slow at some points and then kind of fast," and "not making clear sense." (Doc. 724, at 8, 62.) Officer Dennis further testified that this type of erratic speech "go[es] hand in hand with stimulant use, specifically amphetamines or meth." (*Id.* at 8–9.) He also testified that when Defendant stopped the vehicle, his movements inside the vehicle were "odd" like someone "moving" or "hiding things." (*Id.* at 8.) The Court finds that these observations by Officer Dennis provided him with reasonable suspicion of criminal activity to extend the duration of the initial traffic stop.

Defendant's arguments treat each fact in isolation. (*See* Doc. 728, at 2–9, 17–19.) The proper analysis on whether there is reasonable suspicion to extend a stop, however, requires a court to look at the totality of the circumstance. *Whitley*, 34 F.4th at 532. The R&R outlined ten facts that contributed to the totality of the circumstance to provide Officer Dennis reasonable suspicion to extend the search. Although some of these facts alone may not be sufficient to establish reasonable suspicion, the R&R considered them "together" to find that they were sufficient. As discussed above, this Court finds that two of the facts—Defendant's erratic speech patterns and odd movements in the vehicle consistent with hiding items—are sufficient to establish a reasonable suspicion to extend the traffic stop.

Defendant also objects to Officer Dennis's testimony regarding Defendant's constricted pupils and eye movement, asserting that a non-expert cannot offer such testimony. (Doc. 728, at 7–8.) However, Officer Dennis is permitted to testify about his observations regarding Defendant's behavior during their interaction. *United States v. Reed*, 163 F.4th 338, 356–57 (6th Cir. 2025) (explaining that a law enforcement officer may testify as a lay witness to a conversation that he was a participant). Furthermore, Magistrate Judge Dumitru did not rely on the testimony regarding Defendant's constricted pupils to determine whether there was reasonable suspicion. (*See* Doc. 718, at 14.) The R&R lists the "continuous[] blinking" as a factor supporting reasonable suspicion (*id.*), which is an observation that Officer Dennis was allowed to testify about as a lay witness.

Accordingly, Defendant's objections to the magistrate judge's factual findings and his application of the law to those findings resulting in his ruling that the officer had reasonable suspicion to prolong the stop are **OVERRULED**.

**D. Whether the Consent was Voluntary**

Defendant also objects to Magistrate Judge Dumitru's determination that Defendant voluntarily consented to the search of his vehicle. (Doc. 728, at 19–21.) Defendant concedes that he gave consent but argues that his consent was given while he was illegally seized, thereby tainting his consent. (*Id.* at 19–20.)

"Police may conduct a warrantless search if valid consent to search is given." *United States v. Garcia*, 834 F. App'x 134, 140 (6th Cir. 2020) (citation modified). "[I]f a consent to search is given *after an illegal seizure,* evidence obtained pursuant to the consent to search must be suppressed, unless the consent is sufficiently attenuated from the illegal seizure such that the consent is the product of an intervening act of free will." *United States v. Lopez-Arias*, 344 F.3d

623, 629 (6th Cir. 2003) (emphasis added) (citations omitted); *United States v. Ellis*, 497 F.3d 606, 614 (6th Cir. 2007) (declining to suppress contraband seized where a defendant gave consent because the "lawful traffic stop did not evolve into an unconstitutional seizure").

Here, the traffic stop did not transform into an illegal seizure—Officer Dennis did not unlawfully extend the traffic stop. *See supra* Sections III.B–C. Therefore, no illegal seizure invalidated Defendant's consent to search. Accordingly, Defendant's objection to the R&R's determination that Defendant voluntarily consented to the search of his vehicle is **OVERRULED**.

## IV. CONCLUSION

For the reasons stated above, Defendant's objections to (1) the magistrate judge's lack of finding that Officer Dennis was a non-credible witness; (2) the R&R's conclusion that the traffic stop was lawfully prolonged; (3) in the alternative, there was reasonable suspicion to extend the traffic stop; and (4) the R&R's conclusion that Defendant voluntarily gave consent are **OVERRULED**. Defendant's motion to suppress (Doc. 654) is **DENIED**.

Additionally, the Court hereby **ORDERS** the following schedule:

1. Plea Bargaining shall be concluded by **October 5, 2026**, and any written agreement shall be executed by said date.

2. All motions shall be filed no later than **October 5, 2026**.

3. All requests for jury instructions shall be submitted no later than **October 12, 2026**. The parties shall confer and submit a joint proposal for jury instructions. Before submitting the joint proposal to the Court, the parties must attempt to resolve any disagreements. To the extent there are disagreements as to specific instructions that cannot be resolved, the parties should provide competing instructions in their joint proposal. All jury instructions in the

joint proposal, including agreed instructions and competing instructions, shall be supported by citations of authority. A copy of the proposed jury instructions should be sent in Microsoft Word format to **mcdonough_chambers@tned.uscourts.gov**.

4. A final pretrial conference shall be held before the United States District Judge at **3:00 p.m.** on **October 12, 2026**, in Chattanooga, Tennessee. At or before the final pretrial conference, all parties shall provide a notebook to the Court with exhibits they expect to offer during their cases-in-chief. Each party should also file a written submission advising the Court: (1) how and by whom each document will be authenticated, and (2) the theory of admissibility for the document, with appropriate references to the Federal Rules of Evidence. At the final pretrial conference, the parties should also be prepared to advise the Court whether they intend to offer any out-of-court statements as evidence beyond what is reflected in the exhibit notebook and be prepared to explain why each statement is not barred by the rule against hearsay, the Confrontation Clause, or any other basis. The parties should also be prepared to discuss evidence relating to a crime, wrong, or other act by the defendant, whether that evidence is admissible under Federal Rule of Evidence 404(b)(2), and whether the Government has given appropriate notice. The parties shall also disclose to one another and to the Court the technology they intend to use in the courtroom during the trial and how they intend to use it (e.g., display equipment, data storage, retrieval, or presentation devices). This disclosure shall list: (1) the equipment the parties intend to bring into the courtroom to use and (2) the equipment supplied by the Court the parties intend to use. Further, the parties shall disclose to one another the content of their electronic or digital materials by the time of the final pretrial conference and shall confirm the compatibility/viability of their planned use of technology with the Court's equipment by the final pretrial conference. General information regarding equipment supplied by the Court

is available on the Eastern District of Tennessee website (**www.tned.uscourts.gov**). Specific questions about Court-supplied equipment should be directed to the courtroom deputy (directory available on website).

5. The trial of this case will be held before the United States District Judge and a twelve-person jury beginning on **October 19, 2026, at 9:00 a.m.** in Chattanooga, Tennessee. If this case is not heard immediately, it will be held in line until the following day or any time during the week of the scheduled trial date.

**SO ORDERED.**

/s/***Travis R. McDonough***
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**